IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:17-350-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| WARREN SPRUILL | ) | |
| | ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018 and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 723). Seeking compassionate release, the defendant states that the threat posed by the ongoing COVID-19 pandemic, coupled with his current medical problems, constitute extraordinary and compelling reasons for his immediate release.

The government has responded in opposition, arguing that the defendant has not shown an extraordinary and compelling reason for release. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant replied to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir.

1

2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling

reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

As it appears to this court that the defendant has fully exhausted his administrative remedies, the court will proceed to review the matter on the merits.

DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

*The Defendant's Motion for Compassionate Release*

In his motion (ECF No. 723), the defendant contends that he suffers from hypertension and has pins and rods in his legs. He contends that these conditions, combined with the ongoing COVID-19 pandemic, necessitate his immediate release from incarceration.

5

In its opposition brief, the government points out that pins and rods in the defendant's legs are of no significance regarding the pandemic, and that hypertension is a medical condition identified by the CDC as one which "might" be exacerbated by COVID. For this reason, the government suggests that the defendant has not demonstrated an extraordinary and compelling reason for his release. As a fallback position, the government contends that the defendant's release would result in an immediate danger to the community, when considering the defendant's conduct under the § 3553(a) factors.

In his reply, the defendant has asserted two additional medical problems that were not set out in his original motion. Specifically, he contends that he is obese and that he has a "trait of Sickle Cell" (ECF No. 785). The defendant's Presentence Report (PSR) reveals that he had hypertension at the time he committed the instant crimes, but does not indicate that the defendant was obese when sentenced (ECF No. 432 at ¶ 59).

The defendant has not submitted any medical records from the BOP to support his claim of obesity or Sickle Cell issues. The government did not submit any medical records either.

On this record, the court concludes that the defendant's medical conditions, even in the time of the COVID-19 pandemic, do not constitute an extraordinary and compelling reason for release. Moreover, even if the court were to determine that the defendant had made the required threshold showing, this court would nevertheless exercise its discretion and deny the defendant's motion, relying upon an individualized assessment of his personal situation, including all of the § 3553 factors, and the defendant's post-sentencing conduct.

Under Fourth Circuit guidance, this court will now make an individualized assessment of the defendant's case, with specific attention to the factors under 18 U.S.C. § 3553(a), and also with particular review of the defendant's post-sentencing conduct while incarcerated.

Taking the § 3553(a) factors in order, the court finds as follows:

1. *Nature and Circumstances of the Offense*. The investigation in this case shows that the defendant was involved in the distribution of crack cocaine throughout the Sumter area of South Carolina. Through the use of intercepts and wire-tap communications, a controlled purchase, and information provided by cooperating witnesses, the investigation revealed that the defendant acquired quantities of crack cocaine from Amos Jones and the defendant in turn distributed the crack cocaine to others. Ultimately, the defendant was held accountable for 1,872 grams of crack cocaine for Guideline sentencing purposes.

The defendant was one of 8 co-defendants named in a 42-Count Indictment charging conspiracy to possess with intent to distribute 280 grams or more of cocaine base and 500 grams or more of cocaine powder. He was also charged in two other substantive counts involving use of a telephone facility to facilitate a drug trafficking crime, but those counts were dismissed upon motion from the government.

The government filed an Information (ECF No. 303) pursuant to 21 U.S.C. § 851, notifying the defendant that he was subject to increased penalties based on the following prior convictions: a. Possession of powder cocaine 1st, 2002-GS-40-10798, sentence date February 10, 2003; b. Possession of cocaine 1st, 2006-GS-40-11042, sentence date November 28, 2006; c. Possession of cocaine 2nd, 2007-GS-40-3896, sentence date April

9, 2007; d. Possession of marijuana 2nd, 2007-GS- 40-4566, sentence date January 25, 2008; e. Manufacture, distribution, etc. of cocaine 1st, 2014-GS-40-7165, sentence date February 2, 2015; and Manufacture, distribution, etc. of cocaine 1st, 2014-GS-40-7841, sentence date February 2, 2015.

On September 27, 2017, the defendant signed a written plea agreement (ECF No. 311) and pleaded guilty to the lesser included offense in Count 1— Conspiracy to Possess with Intent to Distribute a Quantity of Cocaine and 28 Grams or More of Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and 851. Under the terms of the plea agreement entered in this case, both the government and the defendant agreed upon a custodial sentence of 151 months pursuant to Fed. R. Crim. P. 11(C)(1)(c).

The Presentence Report (PSR) (ECF No. 473) prepared by the United States Probation Office determined that the defendant faced a mandatory minimum sentence of 10 years under the applicable statute, and that his total offense level was 29, with a criminal history category of IV. This yielded a Guideline sentencing range of 121 to 151 months incarceration. At sentencing in September 2018, this court imposed the agreed upon sentence of 151 months, representing the high end of the applicable Guideline range at sentencing.

The defendant did not appeal his conviction or sentence. He is scheduled to be released from the BOP on January 20, 2028.

2. *History and Characteristics of the Defendant.* The defendant's PSR shows that he has prior felony convictions for possession of powder cocaine, first offense; possession of cocaine, second offense; assault and battery, first degree; resisting arrest; opposing or

resisting or assaulting law enforcement officers; and two counts of manufacturing or distributing cocaine base, first offense. He has several misdemeanor marijuana possession offenses as well.

The defendant is 36 years old, single, and has fathered 8 minor children. The defendant began smoking marijuana at the age of 17 and continued to do so on a daily basis until his arrest. He completed the 8th grade and was last employed as a houseman at Columbia Hospital services in Columbia.

*Post Sentencing Conduct*

The defendant has no disciplinary infractions on his record while at the BOP. Additionally, the defendant is in the process of obtaining his GED. He has participated in the following vocational/educational courses: problem solving, reentry support, positivity, anger management, personal development, and job placement.

The defendant's motion suggests that if he is released to home confinement, he plans to go back to work for Hospital Services and that he will be living with his mother and father in Columbia.

3. *Seriousness of the Crimes*. As evidence by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5.  *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*.  The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6.  *Whether the Sentence Protects the Public from Future Crimes of the Defendant.* The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant.  The court views this as an important factor to be addressed in considering the present motion. This is perhaps one of the most important factors counseling against the defendant's immediate release.  The defendant received a criminal history category score of IV at sentencing, and has numerous serious criminal convictions on his record.  He was responsible for being involved in a conspiracy involving the distribution of a significant quantity of cocaine base, a powerfully addictive substance which is a major problem in the District of South Carolina.  In fact, South Carolina annually appears in the top  5 districts of the Country in terms of crack cocaine prosecutions.  This controlled substance is an ongoing menace that threatens the health and safety of many South Carolina citizens.

7.   *Need to Avoid Unwarranted Disparity*.  Viewing the defendant's sentence as compared with the culpability of the defendant and his associates, his imposed sentence was and is in line with the other co-defendants.

CONCLUSION

For the foregoing reasons, the court determines that, even if the defendant had demonstrated an extraordinary and compelling reason for his release due to his medical conditions, his release at this time is not appropriate in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct. The motion is respectfully denied[1] (ECF No. 723).

IT IS SO ORDERED.

January 18, 2022　　　　　　　　　　　　　　Joseph F. Anderson, Jr.
Columbia, South Carolina　　　　　　　　　　United States District Judge

---

[1] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")